JAMES M. BOYCE, JR., AND SHELLEY A. BOYCE, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Boyce v. Commissioner
Docket No. 6979-89
United States Tax Court
T.C. Memo 1990-658; 1990 Tax Ct. Memo LEXIS 733; 60 T.C.M. (CCH) 1549; T.C.M. (RIA) 90658; December 31, 1990, Filed *733 An appropriate order and decision will be entered. James M. Boyce, Jr. and Shelley A. Boyce, pro se. June Y. Bass, for the respondent. HAMBLEN, Judge. HAMBLEN
*2207 MEMORANDUM OPINION This matter is before the Court on respondent's motion for summary judgment, filed November 8, 1990, pursuant to Rule 121. [1] The issue that respondent seeks to have adjudicated in his favor is whether petitioners, as a matter of law, should be found liable for the tax deficiencies and additions to tax as determined by respondent in the deficiency notices. Petitioners have failed to file any objection to respondent's *734 summary judgment motion. By separate statutory notices of deficiency, both of which are dated March 17, 1989, respondent determined deficiencies in, and additions to, petitioners' Federal income tax as follows: JAMES M. BOYCE
Section
Section
Section
Year
Deficiency
6653(b)
6661(a)
6654(a)
1979
$ 3,947
$ 1,974
-0-
-0-
1980
4,887
2,444
-0-
$ 311
1981
12,705
6,353
-0-
973
Section
Section
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661(a)
6654(a)
1982
$ 15,471
$ 7,736
*
$ 3,868
$ 1,506
1983
14,854
7,427
** *735 3,714
908
1984
14,491
7,246
***
3,623
912
SHELLEY A. BOYCE
Section
Section
Year
Deficiency
6653(b)
6661(a)
6654(a)
1979
$ 2,052
$ 1,046
-0-
-0-
1980
2,785
1,395
-0-
$ 178
1981
9,943
4,972
-0-
762
Section
Section
Section
Section
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661(a)
6654(a)
1982
$ 12,442
$ 6,221
*
$ 3,111
$ 1,211
1983
11,516
5,728
**
2,879
705
1984
10,220
5,110
***
2,555
643
Petitioners were residing in San Luis Rey, California, when they timely filed the consolidated petition in this case. We assume the following facts based on the parties' pleadings, supporting memoranda, and in particular on respondent's first request for *2208 admissions sent to petitioners by certified *736 mail on August 14, 1990. In his request for admissions, respondent sets forth sufficient facts to sustain his determinations of petitioners' tax deficiencies and additions to tax, including the additions to tax for fraud. Because petitioners have failed to respond to respondent's request for admissions, each matter set forth in that document is deemed admitted as fact, pursuant to Rule 90(c), and is incorporated herein by this reference. At all relevant times, petitioners were married and residing in Southern California where they earned a living shoeing horses and doing business as "Sharp Horseshoe Enterprises" or "Sharp Horses." On their 1978 Federal income tax return, petitioners employed the cash receipts and disbursements method of accounting and maintained the calendar year as their taxable year. Petitioners are self-proclaimed "nontaxpayers" who have, in effect, failed to file Federal income tax returns for the years 1979 through 1984. Specifically, petitioners mailed standard IRS Forms 1040 to the Internal Revenue Service Center in Fresno, California, for each of the years 1979, 1980, and 1981. On the forms, petitioners claimed that Mr. Boyce was "self-employed" and *737 Mrs. Boyce was a "homemaker." However, petitioners failed to disclose any financial information on the returns for those years and filled in all the appropriate lines of each return with the words "none" or "object." For the years 1982, 1983, and 1984, petitioners failed to file any Federal income tax return forms. In December 1984, respondent contacted petitioners by letter, requesting that they file completed Federal income tax returns for the years 1979 through 1983. Petitioners admit they never filed the completed returns, including one for 1984, and attempted to hinder the collection of their Federal income tax by transferring and concealing their assets in the following manner. On January 23, 1985, Mrs. Boyce transferred her interest in petitioners' family residence, located at 577 Sleeping Indian Road, San Luis Rey, California (hereinafter "the residence"), to Mr. Boyce by quitclaim deed, making Mr. Boyce the sole owner of the residence. On March 29, 1985, without consideration, Mr. Boyce executed a grant deed transferring the residence to the Jacob Family Preservation Trust, an entity created and controlled by petitioners for purposes of avoiding income tax. On September 20, 1985, petitioners *738 caused the Jacob Family Preservation Trust to transfer the residence by grant deed to the White Rail Company, which is owned and controlled by petitioners. The White Rail Company, at the time of this transfer, had an offshore address used by Nassau Life Insurance Company, Ltd., another entity which assists taxpayers in avoiding the payment and collection of their Federal income taxes. In an attempt to insulate their residence from levy, petitioners, on December 17, 1987, caused the White Rail Company to record a deed of trust and assignment of rents in the amount of $ 350,000 in favor of Northern Plains Services. The deed of trust and assignment of rents are not supported by consideration, and neither the White Rail Company nor petitioners have made any payments on the trust deed. Regardless of legal title, petitioners have continued to live in, and exercise dominion and control over, their residence. In an effort to insulate their truck from a tax levy, petitioners transferred the truck's title to Westcoast Leasing but never gave up possession and control over it. The address of Westcoast Leasing is P.O. Box 25, Aztec, New Mexico, the same address used by Northern Plains Services. *739 In 1986, petitioners began using nominee bank accounts to conduct their horseshoeing business so as to protect their accounts from a tax levy. Respondent scheduled a meeting with petitioners on December 6, 1988, for purposes of either receiving petitioners' delinquent returns or soliciting the necessary information to prepare them. Although Mr. Boyce appeared for the scheduled conference, he failed to produce any books or records and refused to answer respondent's questions. Respondent, therefore, reconstructed petitioners' taxable income for each year in issue using the bank deposits method and by obtaining documents showing that petitioners received fees for their horseshoeing services. Petitioners admit that they have no books or records to substantiate their income and expenses for any of the years at issue and that respondent's reconstruction of their taxable income for those years, using the bank deposits method, is correct. Respondent determined that petitioners deposited the following amounts into their checking accounts, numbered XXXXX-X3125, XXXXX-X4356, and XXXX-XX095-A, at Bank of America in Oceanside, California: Year
Amount Deposited
1979
$  63,598
1980
74,828
1981
157,151
1982
191,145
1983
194,906
1984
186,372
*740 The facts deemed admitted in respondent's first request for admissions establish that no portion of petitioners' bank deposits in 1979 through 1984 was nontaxable income, namely, gifts, inheritances, or loans. Petitioners were paid the following fees for their horseshoeing services during 1983 and 1984. Each payer gave petitioners an IRS Form *2209 1099 for purposes of claiming the fees as income, which petitioners failed to do. Year
Payer
Amount
1983
Hoyt S. Pardee
$  1,900
1984
Hoyt S. Pardee
1,886
Doug Lilly Quarter Horses
10,987
Oak Haven Farms
1,390
Buckeye Ranch Inc.
1,239
Mik-Mar Co.
617
In addition, petitioners received interest income of $ 10 in 1979, $ 128 in 1981, and $ 384 in 1982. Although petitioners have no documents to substantiate any of their ordinary and necessary business expenses, they admit that their expenses did not exceed 60 percent of their gross receipts, the amount that respondent allowed as deductible expenses in computing petitioners' tax deficiencies. The facts deemed admitted in respondent's first request for admissions establish that petitioners failed to report the following amounts *741 of taxable income for the years 1979 through 1984: James M. Boyce, Jr.
Year
Taxable Income
1979
$ 12,729
1980
13,966
1981
30,404
1982
37,344
1983
37,982
1984
36,275
Shelley A. Boyce
Year
Taxable Income
1979
$ 12,729
1980
13,966
1981
30,404
1982
37,344
1983
37,982
1984
36,275
In their consolidated petition, petitioners do not address the determinations made by respondent in the deficiency notice; rather, their so-called "assignments of error" contain only erroneous Constitutional arguments and conclusory allegations of "error" frequently used by tax protestors, namely, (a) petitioners are exempt from a direct unapportioned tax; (b) the statutory notices of deficiency were issued without due process at the administrative level; and (c) petitioners have been deprived of certain procedural safeguards guaranteed to them by the U.S. Constitution. Petitioners' assignments of error were purportedly based on their "statement of facts," which also contains numerous and erroneous statements of law. Petitioners do not dispute respondent's method of computing petitioners' tax deficiencies and additions to tax and challenge only the validity *742 of the deficiency notices on the basis of the Constitutional arguments set forth in the petition. On July 30, 1990, respondent filed a motion for partial summary judgment seeking to dispose of the Constitutional arguments petitioners raised in the petition. On October 24, 1990, we granted respondent's motion for partial summary judgment, reserving for trial the merits of respondent's determinations regarding petitioners' tax deficiencies and additions to tax. Petitioners have continuously refused to comply with Tax Court discovery procedures. On June 14, 1990, respondent served petitioners his first request for interrogatories and production of documents, pursuant to Rules 71 and 72, respectively. The requested information addressed issues presently before this Court. Petitioners ignored the discovery requests. On August 6, 1990, respondent filed a motion to compel petitioners to respond to his interrogatories and comply with his request for the production of documents, or to impose sanctions under Rule 104. Despite a Court order to respond by October 1, 1990, petitioners failed to respond to the discovery requests. Accordingly, the Court issued an order prohibiting petitioners *743 from introducing anything into evidence pertaining to the matters in respondent's requested interrogatories and documents. Respondent filed the summary judgment motion presently before us on November 8, 1990. The Court ordered petitioners to file a response to respondent's motion no later than November 23, 1990. However, petitioners have failed to file any such response. A decision shall be rendered on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b). The moving party bears the burden of proving there is no genuine issue of material fact. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). However, when a motion for summary judgment is properly made, "an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response * * * must set forth specific facts showing that there is a genuine issue for *744 trial. If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party." Rule 121(d). (Emphasis added.) Respondent's determinations in the deficiency notice are presumed correct, and petitioners have the burden of proving they are incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). However, respondent must prove the additions to tax for fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent argues that because petitioners failed to respond *2210 to his motion for summary judgment and have admitted the pertinent facts supporting his determinations, there is no genuine issue of material fact remaining for trial; thus, as a matter of law, petitioners should be found liable for the tax deficiencies and additions to tax. We agree with respondent. As a preliminary matter, we find that respondent was justified in using the bank deposits method of determining petitioners' income and deductions for each year in issue since petitioners failed to produce any books or records of their financial activities and failed to answer respondent's inquiries in his letters and in the auditing *745 sessions. Under these circumstances, we have long held that the bank deposits method of determining taxable income is reasonable. Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). [2]
Section 61(a) provides that gross income includes all income from whatever source derived, including (but not limited to) compensation for services rendered, gross income derived from business, and interest. Although taxpayers engaged in a trade or business are allowed to deduct all the ordinary and necessary business expenses paid or incurred in carrying on a trade or business, they are required to substantiate the amount of their claimed business expenses by maintaining adequate records. Secs. 162(a); 6001; sec. 1.6001-1(a), Income Tax Regs. The matters contained in respondent's first request for admissions, dated August 16, 1990, were uncontested and admitted as facts in this case pursuant to Rule *746 90(c). Those facts establish that petitioners derived gross income for each of the years in issue from fees for their horseshoeing services and from interest. While petitioners have not produced any books or records, respondent has allowed them 60 percent of their business receipts as deductible business expenses, and petitioners admit that their expenses did not exceed that amount. Petitioners simply have not raised any justiciable issue regarding respondent's computations of their income and allowable deductions for any of the six years in issue. Accordingly, petitioners have not carried their burden of disproving respondent's computations of their income and deductions. Therefore, we hold that respondent's determinations with respect to petitioners' tax deficiencies are correct as a matter of law. The next question before this Court is whether there is any genuine issue of material fact precluding us from deciding that the additions to tax respondent determined pursuant to sections 6661(a) and 6654(a) are correct as a matter of law. Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year." Section 6654(a) imposes *747 an addition to tax in the case of a failure of an individual to pay estimated income tax. As to the additions to tax determined by respondent under sections 6661(a) and 6654(a), petitioners have the burden of proof. Rule 142(a). They have given us no reason to believe that respondent has erroneously determined these additions to tax, and, therefore, we find them correct as a matter of law. Respondent determined additions to petitioners' income tax for fraud under section 6653(b) for the years 1979, 1980, and 1981, and under section 6653(b)(1) and (2) for the years 1982, 1983, and 1984. Section 6653(b) and amended section 6653(b)(1) provide that if any part of an underpayment of tax is due to fraud, the taxpayer will be subject to an addition to tax equal to 50 percent of the underpayment. In addition, subsection 6653(b)(2) imposes an amount based on the portion of the underpayment attributable to fraud. Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing. McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976). *748 In order to carry his burden of proving fraud, respondent must demonstrate, by clear and convincing evidence, and underpayment of tax, some part of which was due to fraud. Stone v. Commissioner, 56 T.C. 213, 220 (1971). This burden is met if respondent shows that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968). However, fraudulent intent can be inferred from strong circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Stone v. Commissioner, 56 T.C. at 224. The Ninth Circuit Court of Appeals, to which an appeal in this case would lie, has inferred fraudulent intent from various kinds of circumstantial evidence. These "badges of fraud" include failing to maintain adequate records, failing to file returns, concealing assets, failing to cooperate with tax authorities, and offering implausible or inconsistent explanations for behavior. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986). [3] Petitioners were required to *749 file a tax return for each of the years in issue. Sec. 6012. Obviously, petitioners were aware they were required to file the returns since they had filed them in earlier years and had mailed partially completed Forms 1040 to respondent for their 1979, 1980, and 1981 tax years. However, tax *2211 forms that do not contain information upon which tax liability may be computed, or do not represent an honest and reasonable attempt to satisfy the requirements of the tax law, are not returns within the meaning of the Internal Revenue Code and are invalid. Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. per curiam 793 F.2d 139 (6th Cir. 1986). In addition to petitioners' refusal to file tax returns for six consecutive years, the record is replete with other facts clearly establishing petitioners' underpayment of tax, their failure to maintain adequate records, their refusal to cooperate with tax authorities, their concealment of their assets, and their intent to evade their income taxes or delay their payment for each of the years at issue. [4] Accordingly, we find respondent has established fraud by clear and convincing evidence for each of the *750 years in issue and that the additions to tax for fraud were correctly determined as matter of law. Finally, a review of the record herein shows that an award of damages on the Court's own motion, pursuant to section 6673, is clearly justified. *751 Section 6673(a)(1) provides that whenever it appears to the Tax Court that (a) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (b) the taxpayer's position in such proceeding is frivolous or groundless, or (c) the taxpayer unreasonably failed to pursue available administrative remedies, the Tax Court, in its decision, may require the taxpayer to pay a penalty to the United States not in excess of $ 25,000. Section 6673 makes no attempt to infringe upon the right of any citizen who, acting seriously and in good faith, wishes to petition this Court for redress of grievances which he has against respondent. However, petitioners' tax protestor arguments have uniformly been held by this Court to be entirely without merit, and by now, the continued assertion of such frivolous and meritless claims can no longer be considered to be serious efforts by bona fide taxpayers to vindicate a legitimate position. Such arguments are, in short, frivolous. See Larsen v. Commissioner, 765 F.2d 939 (9th Cir. 1985), affg. an order of dismissal of this Court; Bell v. Commissioner, 85 T.C. 436, 442 (1985). Petitioners are *752 not "nontaxpayers" as they claim but quintessential tax protestors who, despite repeated warnings from this Court and respondent, have continually abused the process of this Court by flaunting frivolous assertions, devoid of any legal status, and by refusing to obey the tax laws and to comply with the Tax Court's discovery procedures. While we are normally reluctant to impose a penalty under section 6673 in fraud cases, the record in this case establishes that petitioners have had no interest in disputing either the deficiencies or additions to tax determined by respondent. [5] Thus, given the egregious nature of petitioners' conduct, we require petitioners to pay to the United States a penalty in the amount of $ 5,000 each, pursuant to section 6673(a).
For the foregoing reasons, we find there are no genuine issues of material fact to be tried. Accordingly, we sustain respondent's determinations contained in the notices of deficiency, *753 including the additions to tax for fraud, and find that respondent is entitled to a summary adjudication on the merits of this case as a matter of law. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.↩
*. 50% of the interest due on $ 15,471.↩
**. 50% of the interest due on $ 14,854. ↩
***. 50% of the interest due on $ 14,491.↩
*. 50% of the interest due on $ 12,442.↩
**. 50% if the interest due on $ 11,516.↩
***. 50% of the interest due on $ 10,220.↩
2. See also Michalowski v. Commissioner, T.C. Memo. 1976-192↩.
3. See also Morris v. Commissioner, T.C. Memo. 1990-580↩.
4. In their continuing effort to avoid, hinder, and delay respondent's assessment and collection of their tax deficiencies, petitioners filed a motion on Nov. 27, 1990, demanding that the trial judge disqualify himself from the case due to his alleged personal bias or prejudice against petitioners. In the affidavit attached to their motion, petitioners failed to produce any evidence of bias or impartiality on the part of the fact finder; rather, they merely recited the overly familiar and erroneous Constitutional arguments that this Court, and others, have consistently rejected as tiresome tax protestor rhetoric. Accordingly, we denied petitioners' motion to disqualify the judge on Dec. 3, 1990.↩
5. See for example Cauvel v. Commissioner, T.C. Memo. 1989-547↩.